# UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK, AS TRUSTEE FOR THE BENEFIT OF THE CERTIFICATE HOLDERS OF THE CWABS INC., ASSET-BACKED CERTIFICATES, SERIES 2006-SD3,<br><br>Plaintiff,<br><br>v.<br><br>BRENDA L. DAVIDSON, an individual; UNITED STATES OF AMERICA; CITY OF PORTERVILLE; and DOES 1 through 50, inclusive,<br><br>Defendants. | No. 1:17-cv-01335-DAD-EPG<br><br>ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, GRANTING THE STIPULATION BETWEEN PLAINTIFF AND THE UNITED STATES, AND DENYING AS MOOT THE UNITED STATES' MOTION FOR JUDGMENT ON THE PLEADINGS<br><br>(Doc. Nos. 22, 23) |

This matter is before the court on defendant United States of America's motion for judgment on the pleadings and plaintiff's motion for summary judgment. (Doc. Nos. 22, 23.) On May 7, 2019, those motions came before the court for hearing. Attorney Cuong Nguyen appeared on behalf of plaintiff Bank of New York Mellon. U.S. Department of Justice, Tax Division, Trial Attorney Jonathan Hauck appeared on behalf of defendant United States. Defendant Brenda Davidson appeared *pro se*. Having considered the parties' briefing and argument, plaintiff's motion for summary judgment will be granted in part and denied in part, the stipulation between

/////

1

plaintiff and the United States will be granted, and the United States' motion for judgment on the pleadings will be denied as moot.

**BACKGROUND**

The following convoluted facts are taken from plaintiff's motion for summary judgment and appear to be undisputed.[1] On or around June 7, 2006, defendant Brenda Davidson ("Davidson" or "Borrower") executed and delivered to Zone Funding an Adjustable Rate Note ("Note") evidencing a mortgage loan to Borrower in the amount of $304,500.00. (Doc. No. 23-2 at 7–14.) The Note was subsequently lost or destroyed, and an Affidavit of Lost Note was executed by Bank of America, National Association, which was the servicer of the loan at the time of execution. (*Id.* at 16–18.)

To secure payment of the principal sum and interest on the Note, Borrower executed and delivered to Mortgage Electronic Registrations Systems, Inc. ("MERS"), as nominee for Zone Funding, a deed of trust dated June 7, 2006 ("First DOT") and encumbering the real property commonly known as 22278 West Thurman Avenue, Porterville, CA 83257 (the "Property"). (*Id.* at 20–41.) Through inadvertence or mistake by Zone Funding's escrow company, the First DOT was never recorded in the Official Records of Tulare County. (Doc. No. 23-4 at ¶ 5.)

The beneficial interest in the Note was subsequently transferred from Zone Funding to plaintiff. (*Id.* at ¶ 6; Doc. No. 23-2 at 14.) Plaintiff is in possession of the Affidavit of Lost Note and is the current holder of the rights to the loan and the First DOT. (Doc. No. 23-4 at ¶ 7.)

The beneficial interest in the First DOT was intended to be transferred to plaintiff as well, as evidenced by a written Assignment of Deed of Trust ("ADOT") recorded on April 4, 2012, as Instrument No. 2012-0020384, in the Official Records of Tulare County. (Doc. No. 23-2 at 43–44.) The ADOT correctly describes the First DOT with reference to the original lender as Zone Funding, the borrower as Brenda Davidson, the trustee as United Independent Title Insurance Company, the loan date as June 7, 2006, and the original loan amount as $304,500.00. (*Id.* at 44.)

---

[1] Defendant United States filed a statement of non-opposition to plaintiff's motion for summary judgment. (Doc. No. 27.) Defendant Davidson did not file an opposition or otherwise respond to plaintiff's motion for summary judgment. Defendant City of Porterville has not appeared in this action.

The ADOT was furthermore signed by MERS, the nominee of the original lender Zone Funding. (*Id.*) However, the ADOT references the assigned deed of trust as having been recorded as Instrument No. 2006-0065344. (*Id.*) Because the First DOT was never recorded, this recording number cannot refer to the First DOT.

In the title history for the Property, there is a document recorded under Instrument No. 2006-0065344—the recording number specified in the ADOT. (Doc. No. 23-2 at 46–63.) That document is a deed of trust in the amount of $326,000.00 ("Second DOT"), which was signed by Borrower in May 2006, but was not recorded until fifteen days after plaintiff's Note and First DOT were signed. (*Id.*) The lender identified in the Second DOT is SRI, a California corporation. (*Id.*)

In any event, Borrower defaulted under the obligations of the Note and First DOT by failing to tender the monthly installment payment first coming due November 1, 2006 and each monthly installment thereafter. (Doc. No. 23-4 at ¶ 16.)

As a result of Borrower's default under the Note and First DOT, plaintiff commenced foreclosure proceedings against the Property pursuant to the terms of the First DOT. (*Id.* at ¶ 17.) Plaintiff ordered a title report and discovered that the First DOT was unrecorded. (*Id.* at ¶ 18.) Moreover, there was no recorded assignment properly transferring the beneficial interest in the First DOT to plaintiff, although there was a recorded assignment that identified the correct lender and dollar amount. (*Id.* at ¶ 19.)

There are three Notices of Federal Tax Lien recorded in the title history to the property. (Doc. No. 23-3 at 39–41.) The first was recorded on September 28, 2010, in the amount of $243,789.01; the second was recorded on March 15, 2016, in the amount of $69,403.42; and the third was recorded on July 6, 2016, in the amount of $1,937.47. (*Id.*)

Plaintiff commenced this action in Tulare County Superior Court on August 7, 2017, bringing causes of action for: (1) imposition of equitable lien (mortgage); (2) enforcement of lost, destroyed or stolen instrument; (3) declaratory relief; and (4) reformation of instrument. (Doc. No. 1-1.) Specifically, plaintiff seeks a judgment imposing a lien in the form of an equitable mortgage in favor of plaintiff, including all rights and interests as set forth in the deed

of trust dated June 7, 2006 and executed by Brenda Davidson; a judgment declaring that the lien created by the deed of trust has priority over all liens recorded in connection with the Property in the Official Records of Tulare County on or after June 7, 2006; a judgment assigning all rights, title, and interest in the subject deed of trust to plaintiff; a judgment allowing plaintiff to enforce the lost, destroyed, or stolen Note for all purposes and against any and all persons; a judicial declaration that the beneficial interest in the unrecorded deed of trust and Note were intended to be assigned to plaintiff; that the deed of trust recorded as Document No. 2006-0065344 be reformed by replacing its text with the text of the unrecorded deed of trust; and that the unrecorded deed of trust be declared to be recorded on June 7, 2006. (*Id.* at 15–16.)[2]

On October 4, 2017, the United States removed this action to federal court. (Doc. No. 1.) On March 1, 2019, the United States filed a motion for judgment on the pleadings, and plaintiff filed a motion for summary judgment. (Doc. Nos. 22, 23.) On April 2, 2019, plaintiff and the United States filed a stipulation and proposed order regarding the relative priority between the interests of the United States and plaintiff in the Property. (Doc. No. 26.) The same day, the United States filed a statement of non-opposition to plaintiff's motion for summary judgment, and plaintiff filed a statement of non-opposition to the United States' motion for judgment on the pleadings. (Doc. Nos. 27, 28.) Borrower, defendant Davidson, did not file any opposition to or otherwise respond to the pending motions.

At the May 7, 2019 hearing on these motions, the court noted that defendant City of Porterville had not appeared in this action, and that plaintiff had not filed a motion for default judgment against it. The court further noted that plaintiff's motion identified "SRI" as another party potentially interested in the litigation, who was not named as a defendant in the matter. The court directed plaintiff to take any steps necessary to clarify the status of these entities and notify the court when such steps had been completed. (*See* Doc. No. 34.) On July 17, 2019, the court directed plaintiff to file a status report addressing the status of its efforts in this regard, which plaintiff did on July 24, 2019. (Doc. Nos. 35, 36.)

---

[2] In short, plaintiff seeks to put Humpty-Dumpty back together again.

**LEGAL STANDARDS**

**A.     Summary Judgment**

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

In summary judgment practice, the moving party "initially bears the burden of proving the absence of a genuine issue of material fact." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). The moving party may accomplish this by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or by showing that such materials "do not establish the absence or presence of a genuine dispute, or that the adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A), (B). If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. *See* Fed. R. Civ. P. 56(c)(1); *Matsushita*, 475 U.S. at 586 n.11; *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002) ("A trial court can only consider admissible evidence in ruling on a motion for summary judgment."). The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *See Wool v. Tandem Computs., Inc.*, 818 F.2d 1433, 1436 (9th Cir. 1987).

/////

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv.*, 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" *Matsushita*, 475 U.S. at 587 (citations omitted).

"In evaluating the evidence to determine whether there is a genuine issue of fact," the court draws "all reasonable inferences supported by the evidence in favor of the non-moving party." *Walls v. Cent. Contra Costa Cty. Transit Auth.*, 653 F.3d 963, 966 (9th Cir. 2011). It is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. *See Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244–45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898, 902 (9th Cir. 1987). Undisputed facts are taken as true for purposes of a motion for summary judgment. *Anthoine v. N. Cent. Counties Consortium*, 605 F.3d 740, 745 (9th Cir. 2010). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citation omitted).

**B.     Judgment on the Pleadings**

Rule 12(c) of the Federal Rules of Civil Procedure provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." In reviewing a motion brought under Rule 12(c), the court "must accept all factual allegations in the complaint as true and construe them in the light most favorable to the nonmoving party." *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009).

The same legal standard applicable to a Rule 12(b)(6) motion applies to a motion brought pursuant to Rule 12(c). *Dworkin v. Hustler Magazine, Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989). Accordingly, "judgment on the pleadings is properly granted when, taking all the allegations in the non-moving party's pleadings as true, the moving party is entitled to judgment as a matter of law." *Marshall Naify Revocable Tr. v. United States*, 672 F.3d 620, 623 (9th Cir. 2012) (quoting

*Fajardo v. County of Los Angeles*, 179 F.3d 698, 699 (9th Cir. 1999)); *see also Fleming*, 581 F.3d at 925 (noting that "judgment on the pleadings is properly granted when there is no issue of material fact in dispute, and the moving party is entitled to judgment as a matter of law"). The allegations of the nonmoving party must be accepted as true, while any allegations made by the moving party that have been denied or contradicted are assumed to be false. *MacDonald v. Grace Church Seattle*, 457 F.3d 1079, 1081 (9th Cir. 2006). The facts are viewed in the light most favorable to the non-moving party and all reasonable inferences are drawn in favor of that party. *Living Designs, Inc. v. E.I. DuPont de Nemours & Co.*, 431 F.3d 353, 360 (9th Cir. 2005).

Courts have discretion both to grant a motion for judgment on the pleadings with leave to amend or to simply grant dismissal of causes of action rather than grant judgment as to them. *Lonberg v. City of Riverside*, 300 F. Supp. 2d 942, 945 (C.D. Cal. 2004) (citations omitted); *see also Pac. W. Grp. v. Real Time Sols., Inc.,* 321 Fed. App'x 566, 569 (9th Cir. 2008);[3] *Woodson v. State of California*, No. 2:15-cv-01206-MCE-CKD, 2016 WL 524870, at *2 (E.D. Cal. Feb. 10, 2016). Generally, dismissal without leave to amend is proper only if it is clear that "the complaint could not be saved by any amendment." *Intri-Plex Techs. v. Crest Grp.*, 499 F.3d 1048, 1056 (9th Cir. 2007) (citing *In re Daou Sys., Inc.*, 411 F.3d 1006, 1013 (9th Cir. 2005)); *see also Ascon Props., Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1160 (9th Cir. 1989) (noting that "[l]eave need not be granted where the amendment of the complaint . . . constitutes an exercise in futility").

**ANALYSIS**

**A.    Plaintiff's Request for Judicial Notice**

In connection with its motion for summary judgment, plaintiff requests that the court take judicial notice of: (1) an assignment of deed of trust recorded on April 4, 2012, as Instrument No. 2012-0020384, in the Official Records of Tulare County; (2) a deed of trust recorded on June 22, 2006, as Instrument No. 2006-0065344, in the Official Records of Tulare County; (3) a notice of federal tax lien recorded on September 28, 2010, as Instrument No. 2010-0059652, in the Official

---

[3] Citation to this unpublished Ninth Circuit opinion is appropriate pursuant to Ninth Circuit Rule 36-3(b).

7

Records of Tulare County; a notice of federal tax lien recorded on March 15, 2016, as Instrument No. 2016-0013816, in the Official Records of Tulare County; and a notice of federal tax lien recorded on July 6, 2016, as Instrument No. 2016-0039412, in the Official Records of Tulare County; (4) defendant Brenda L. Davidson's answer to plaintiff's complaint in this action, filed on February 8, 2019; and (5) business records for SRI from the California Secretary of State Business Information Search. (Doc. No. 23-3.)

Federal Rule of Evidence 201 provides that "[t]he court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201. A court may also take judicial notice of undisputed "matters of public record." *Lee v. City of Los Angeles*, 250 F.3d 668, 688–89 (9th Cir. 2001). A court may take judicial notice of a public record not for the truth of the facts recited therein, but for the existence of the document. *Id.* at 690.

It is unclear to the court why plaintiff seeks judicial notice of documents identified above. At the summary judgment stage, these documents could have been attached to the moving papers without judicial notice. Indeed, some of the documents for which plaintiff requests judicial notice are duplicative of the documents attached to plaintiff's declaration in support of summary judgment. (*Compare* Doc. No. 23-2 at 43–44, 46–63 *with* Doc. No. 23-3 at 14–15, 18–35.) Moreover, if the court took judicial notice, it would only notice the existence of the documents, and not the truth of any facts asserted therein. Finding no reason to take judicial notice at this stage of the litigation, the court denies plaintiff's request for judicial notice, but will consider the documents identified above as admissible evidence submitted in support of plaintiff's motion for summary judgment.

**B.     Plaintiff's Motion for Summary Judgment**

Plaintiff seeks summary judgment in its favor on each of its claims for relief. Specifically, plaintiff seeks the imposition of an equitable lien securing the Borrower's loan obligation, an order confirming its entitlement to enforce the missing promissory note, reformation of the erroneously recorded deed of trust, and a judicial declaration of the rights and duties of the parties

in relation to the Property. (Doc. No. 23-1 at 2.) The United States filed a statement of non-opposition to plaintiff's motion for summary judgment (Doc. No. 27), and defendant Davidson has failed to oppose or otherwise respond to plaintiff's motion. The court addresses each of plaintiff's claims for relief below.

### 1. Imposition of Equitable Lien

California's codification of the statute of frauds generally requires a written agreement to create an interest in property. *See* Cal. Civ. Pro. Code § 1971. The "equitable lien" doctrine, however, is an exception to this requirement, creating a lien on property where necessary to accomplish substantial justice and protect creditors. *See Grappo v. Coventry Fin. Corp.*, 235 Cal. App. 3d 496, 509 (1991); *see also In re Henshaw's Estate*, 68 Cal. App. 2d 627, 636 (1945) ("The accepted rule is that equitable liens are favored to do justice and prevent unfair results."). Courts have thus construed the existence of equitable liens:

> where the parties have erroneously created a defective mortgage; where, despite the lack of any formal mortgage or deed of trust it is apparent that the parties intended to create a security interest in property; where the parties have otherwise clearly attempted or intended to make real property security for an obligation; or, even in the absence of any agreement, where it is necessary to prevent unjust enrichment.

*Id.* (internal citations omitted); *see also Farmers Ins. Exchange v. Zerin*, 53 Cal. App. 4th 445, 453 (1997) ("An equitable lien . . . may arise from a contract which reveals an intent to charge particular property with a debt or out of general considerations of right and justice as applied to the relations of the parties and the circumstances of their dealings."); *In re Cedar Funding, Inc.*, 408 B.R. 299, 314 (Bankr. N.D. Cal. 2009) ("[T]here are two categories of equitable liens, those used to give effect to the parties' agreement or intention and those imposed because equity demands it despite the absence of intent or even evidence of contrary intent.").

Plaintiff argues that if it appears from an instrument that there is an intent to give or pledge real or personal property as security for an obligation, and the property is so described that the principal things intended to be given or pledged can be sufficiently identified, a lien follows. (Doc. No. 23-1 at 7.) Here, plaintiff contends that it cannot be reasonably disputed that the parties intended to pledge the Property as collateral for the loan: the First DOT references the

loan extended to Borrower by lender Zone Funding in the amount of $304,000.00, states that it constitutes a "Security Instrument," and identifies the Property—by address, Parcel ID Number, and legal description—as collateral for the loan. (*Id.*)  Although the First DOT was never recorded, plaintiff argues that it is an instrument indicating that upon obtaining the loan from plaintiff's predecessor in interest, Zone Funding, Borrower intended to pledge the Property as security for the obligation currently owed to plaintiff. (*Id.*)  Alternatively, plaintiff argues that even if the First DOT did not evidence intent to create a lien on the Property, Borrower does not deny the fact that she obtained the loan from plaintiff's predecessor in interest nor does she deny that she subsequently defaulted under the terms of the Note and the First DOT. (*Id.* at 8; *see generally* Doc. No. 12.)  Permitting Borrower to retain and enjoy the benefit of the loan proceeds, while depriving plaintiff of a security interest in the Property and a recourse following Borrower's default, would result in Borrower's unjust enrichment. (*Id.* at 8.)

The court finds that the undisputed facts establish an intent by the parties to pledge the Property as collateral for the loan, and that, in the absence of a lien, Borrower would be unjustly enriched.  Accordingly, the court finds that plaintiff is entitled to an equitable lien against the Property.  The court further concludes that the equitable lien relates back to the conduct on which it is founded. *Hise v. Superior Court*, 21 Cal.2d 614, 627 (1943) ("Although an equitable lien is not judicially recognized until a judgment is rendered declaring its existence, the lien relates to the time it was created by the conduct of the parties.").  Thus, the equitable lien here relates back to June 7, 2006, the date on which Borrower obtained the proceeds of the loan and executed the Note and First DOT. (Doc. No. 23-1 at 8.)

However, with respect to the three recorded Notices of Federal Tax Lien, federal law prohibits plaintiff from relating back its equitable lien to obtain priority over federal tax liens. *See United States v. Sec. Tr. & Sav. Bank*, 340 U.S. 47, 50 (1947) (holding that federal tax liens are superior to inchoate attachment liens); *see also United States v. Acri*, 348 U.S. 211, 213–14 (1955) (holding that state relation-back doctrine did not render otherwise inchoate state lien choate as against competing federal tax lien).  Based on this authority, plaintiff states that it does not seek a declaration that its lien take priority over those notices of federal tax lien recorded

(1) on September 28, 2010 in the amount of $243,789.01; (2) on March 15, 2016 in the amount of $69,403.42; and (3) on July 6, 2016 in the amount of $1,937.47. (Doc. No. 23-1 at 9.) Plaintiff thus concedes that, to the extent these three notices of federal tax lien remain enforceable, they would retain priority over plaintiff's equitable lien and/or reformed deed of trust. (*Id.*)

### 2. Enforcement of the Note

The California Commercial Code defines a "person entitled to enforce" an instrument as "(a) the holder of the instrument, (b) a nonholder in possession of the instrument who has the rights of a holder, or (c) a person not in possession of the instrument who is entitled to enforce the instrument pursuant to Section 3309 or subdivision (d) of Section 3418." Cal. Com. Code § 3301. Plaintiff argues that it is entitled to enforce the Note pursuant to § 3309 of the California Commercial Code, which specifies the conditions under which a negotiable instrument can be enforced even if the original instrument cannot be located:

> A person not in possession of an instrument is entitled to enforce the instrument if (1) the person was in possession of the instrument and entitled to enforce it when loss of possession occurred, (2) the loss of possession was not the result of a transfer by the person or a lawful seizure, and (3) the person cannot reasonably obtain possession of the instrument because the instrument was destroyed, its whereabouts cannot be determined, or it is in the wrongful possession of an unknown person or a person that cannot be found or is not amenable to service of process.

*Id.* § 3309(a).

Here, the court finds that plaintiff does not meet the requirements under § 3309(a) to enforce the Note. Plaintiff presents evidence that after the Note was lost, stolen, or destroyed, the ALN was executed by Bank of America, National Association, the servicer of the loan at the time, and is currently in plaintiff's possession. The ALN attests that the loss of possession of the Note was not the result of a transfer or a lawful seizure of the Note. (*See* Doc. No. 23-2 at 17.) The ALN also attests that possession of the Note cannot reasonably be obtained because the Note was destroyed, its whereabouts cannot be determined, or it is in the wrongful possession of an unknown person. (*Id.*) However, in moving for summary judgment plaintiff has presented no evidence that it was in possession of the instrument and entitled to enforce it *when loss of possession occurred*. Rather, plaintiff has come forward only with evidence of an allonge,

11

attached to the Note and made a part thereof, endorsing the Note in blank (*see* Doc. No. 23-2 at 14) and therefore ostensibly payable to plaintiff as its last bearer. *See* Cal. Com. Code § 3205(b) ("When indorsed in blank, an instrument becomes payable to bearer and may be negotiated by transfer of possession alone until specially indorsed."). However, plaintiff offers no evidence addressing when it became the bearer of the Note, when the Note was lost, and whether plaintiff possessed the Note and the entitlement to enforce the Note at the time it was lost. For these reasons, the court concludes that plaintiff has not yet met the requirements to enforce the Note pursuant to California Commercial Code § 3309(a).

### 3. Reformation of the Second Deed of Trust

Plaintiff next seeks reformation of the Second DOT. Plaintiff argues that it is undisputed that the unrecorded First DOT represents the parties' intended agreement to be recorded in the Official Records of Tulare County, but that the Second DOT in the amount of $326,000.00 recorded as Document No. 2006-0065344 in connection with the Property was recorded in place of the First DOT due to mistake, inadvertence, or neglect. (Doc. No. 23-1 at 11.) In order to effectuate the intent of the parties, plaintiff seeks reformation of the Second DOT by replacing its text with that of the unrecorded First DOT. (*Id.* at 12.) Plaintiff contends that reformation would not be prejudicial to defendants because, based on the recorded Second DOT, all junior interests were aware of an encumbrance upon the Property as of June 2006. (*Id.*)

"The purpose of reformation is to correct a written instrument in order to effectuate a common intention of both parties which was incorrectly reduced to writing." *Lister v. Sorge*, 260 Cal. App. 2d 333, 338 (1968) (citation omitted). "To justify the court in changing the language of the instrument sought to be reformed, . . . it must be established that both parties agreed to something different from what is expressed in the writing, and the proof upon this point should be . . . clear and convincing." *Id.* (citation omitted); *see also Mills v. Schulba*, 95 Cal. App. 2d 559, 561 (1950) ("Our courts have repeatedly held that the mistake of a draftsman is a good ground for the reformation of an instrument which does not truly express the intention of the parties.") (citation omitted). Reformation is proper "so far as it can be done without prejudice to

/////

12

rights acquired by third persons, in good faith and for value." *Shupe v. Nelson*, 254 Cal. App. 2d 693, 698 (1967).

Here, plaintiff seeks an order substituting the recorded Second DOT altogether for the unrecorded First DOT in the Tulare County records. It is entirely unclear whether such a substitution would constitute "reformation" of a written contract at all, because plaintiff seeks to "reform" a contract that it was never a party to. Moreover, plaintiff has presented no authority supporting the proposition that it would be entitled to do so. Relatedly, reformation by substituting the recorded Second DOT for the unrecorded First DOT would seem to implicate the interests of the beneficiary under the Second DOT, i.e. lender SRI, who is not a party to this litigation. As discussed above, the court raised this issue at the May 7, 2019 hearing on the pending motions, and counsel for plaintiff represented that SRI's status according to the California Secretary of State's website is "suspended." The court directed plaintiff to take the steps necessary to name SRI as a defendant and seek the entry of default judgment against it if necessary.[4]

As noted above, on July 17, 2019, having received no update from plaintiff on the status of this litigation, the court issued an order directing plaintiff to file a status report within seven days. (Doc. No. 36.) Plaintiff filed its status report on July 24, 2019. (Doc. No. 36.) Therein, plaintiff stated that should SRI need to be named as a defendant in order to grant the requested relief, the court is authorized to order such joinder pursuant to Federal Rule of Civil Procedure 19. (*Id.* at 2.) Plaintiff further stated that if the court does not order joinder, plaintiff will seek a stipulation from the parties, and if such stipulation cannot be obtained, plaintiff will move for leave to amend its complaint. (*Id.*)

The court declines to order joinder of SRI. The court previously alerted plaintiff to its concerns on May 7, 2019 and granted plaintiff time to decide how to proceed in this action

---

[4] The court also directed plaintiff to notify the court whether the City of Porterville had defaulted in this action and to seek default judgment against it. In plaintiff's status report filed July 24, 2019, plaintiff explained that prior to removal of this action to federal court, default was entered against the City of Porterville on October 3, 2017 and attached copies of the proof of service and request for entry of default filed in state court. (Doc. No. 36 at 4–9.) To date, however, plaintiff has not moved for a default judgment against the City of Porterville.

13

against SRI. Plaintiff's status report provided no new information with respect to SRI but rather attempts to shift the onus to the court to join SRI as a defendant in this action. It is not the court's responsibility to litigate this action on plaintiff's behalf. Because plaintiff has provided the court with no authority for its request to "reform" a contract to which it is not a party, and because granting such relief would, in any event, prejudice the rights of a non-party to this action, the court concludes that plaintiff is not entitled to reformation of the Second DOT.

### 4. Declaratory Relief

Finally, plaintiff seeks a determination of the rights and duties of the parties. Plaintiff seeks a judicial declaration that: (1) the First DOT has priority over all liens recorded against the Property in the Official Records of Tulare County on or after June 7, 2006; (2) plaintiff is the proper assignee of the First DOT pursuant to the ADOT; and (3) the interests of defendants and all other claimants created after June 7, 2006 are inferior to that of plaintiff, with the exception that, to the extent the three notices of federal tax lien remain enforceable, those three notices will retain priority over plaintiff's equitable lien and/or reformed deed of trust. (Doc. No. 23-1 at 13.)

The decision to grant declaratory relief is discretionary. *United States v. Washington*, 759 F.2d 1353, 1356 (9th Cir. 1985). "Declaratory relief should be denied when it will neither serve a useful purpose in clarifying and settling the legal relations in issue nor terminate the proceedings and afford relief from the uncertainty and controversy faced by the parties." *Id.* at 1357 (citations omitted). In light of the court's denial of plaintiff's motion for summary judgment as to its claims for enforcement of the Note and reformation of the Second DOT, plaintiff's request for declaratory relief will also be denied.

### B. United States' Motion for Judgment on the Pleadings

The United States has separately moved for judgment on the pleadings that its federal tax liens are superior to plaintiff's interest in the Property. (Doc. No. 22.) The United States argues that a federal tax lien takes priority over competing liens unless the competing lien was choate, or fully established, prior to the attachment of the federal lien. (Doc. No. 22-1 at 4) (citing *Noriega & Alexander v. United States*, 859 F. Supp. 406, 409 (E.D. Cal. 1994)). Because plaintiff's lien was inchoate, or not fully perfected, at the time the federal tax liens were recorded, the United

States asserts that plaintiff's interest in the Property remains inferior to that of the United States. (*Id.* at 4–5.) The United States also argues that the relation back doctrine is ineffective against federal tax liens, and thus even if the court reforms the Second DOT and relates it back to the date on which it was originally filed, the priority of the federal tax liens will not be displaced. (*Id.* at 5–6) (citing cases).

Plaintiff does not oppose the United States' motion for judgment on the pleadings (Doc. No. 28), and indeed, plaintiff's motion for summary judgment concedes that, to the extent the United States' tax liens are enforceable under applicable law, such tax liens take priority over plaintiff's interest in the Property. (*See* Doc. No. 23-1 at 9, 13.) Accordingly, on April 2, 2019, plaintiff and the United States filed a joint stipulation. (Doc. No. 26.) The stipulation states that Notices of Federal Tax Lien were filed against Davidson with the County of Tulare on September 28, 2010, March 15, 2016, and July 6, 2016. (*Id.* at ¶ 6.) The parties stipulate that, to the extent the identified tax liens are enforceable under applicable law, such tax liens are senior to and have priority over plaintiff's interest in the Property. (*Id.* at ¶ 7.) The parties agree to bear their respective costs related to this litigation, including any possible attorney's fees, and that plaintiff claims no monetary relief against the United States. (*Id.* at ¶¶ 8–9.)

The court will adopt and grant the parties stipulation. The United States' motion for judgment on the pleadings will be denied as having been rendered moot by the court's order adopting the stipulation.[5]

**CONCLUSION**

For the reasons stated above:

1. Plaintiff's motion for summary judgment (Doc. No. 23) is granted as to its first claim for an equitable lien, and is denied in all other respects;

2. Plaintiff's request for judicial notice (Doc. No. 23-3) is denied;

/////

---

[5] At the hearing on the pending motions counsel for both plaintiff and the United States agreed that if the parties' stipulation was adopted by the court the same relief being sought by the United States in its motion for judgment on the pleadings would be granted.

3. The stipulation of Plaintiff and the United States (Doc. No. 26) is adopted and granted;
   a. To the extent the United States' tax liens identified in the stipulation are enforceable under applicable law, such tax liens are senior to and have priority over plaintiff's interest in the Property;
4. The United States' motion for judgment on the pleadings (Doc. No. 22) is denied as having been rendered moot by the stipulation; and
5. The Clerk of the Court is directed to terminate the United States from the docket in this action.

IT IS SO ORDERED.

Dated: **August 15, 2019**

*Dale A. Drozd*
UNITED STATES DISTRICT JUDGE